UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEBORAH PARKER and<br>DONALD PARKER | § § § § § | |
| Plaintiffs, | | |
| vs. | § § | Cause No.1:07-CV-338-SS |
| KEYBANK, N.A. | § § § § | |
| Defendant. | | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE SAM SPARKS, UNITED STATES DISTRICT JUDGE:

COMES NOW, KeyBank, N.A. (hereinafter "KEY") to file this its Motion For Summary Judgment pursuant to Rule 56(b) Fed. R .Civ. P. Contemporaneously herewith KEY has filed its Brief In Support Of Motion For Summary Judgment and incorporates the contents of same by reference as if fully and completely set out herein. In support of this Motion For Summary Judgment, KEY respectfully shows unto the Court as follows:

### I.
### INTRODUCTION

1.1   The case before this Court is a sad case of misunderstanding. The Plaintiffs, Deborah and Donald Parker (hereinafter collectively referred to as the "Parkers"), have made choices that have damaged their credit and they now want to blame someone for those choices. In 2004 the Parkers borrowed $25,100.00 from EncoreBank to build a swimming pool. Shortly after the loan closed, it was sold by EncoreBank to KEY. The

Parkers did build their swimming pool. Not long after the pool was finished, however, the Parkers filed for bankruptcy under Chapter 7 of the Bankruptcy Code under Case No. 04-15172. The Parkers chose to keep the house with the new swimming pool and continued to pay both the mortgage on the house and the mortgage on the pool. The Parkers, however, chose not to reaffirm the debt to KEY for the swimming pool, though they did reaffirm other debts. The Parkers received their discharge in bankruptcy on January 10, 2005. Apparently, the Parkers believed that because they continued to pay the KEY debt, it was not "included" in their bankruptcy and therefore would not appear on their credit report in connection with the KEY trade line reporting of the Parkers' account with KEY. The Parkers notified KEY and one or more Credit Reporting Agencies that they disputed the bankruptcy reference on the KEY trade line because the Parkers continued to pay the KEY debt during and after the bankruptcy. The Parkers also complained that the KEY trade line on their credit report reflected that the KEY account was listed as "closed", the account was listed as "discharged in bankruptcy with a $25,000.00 balance", and the Parker bankruptcy was improperly listed as discharged in August 2005 when the discharge occurred in January 2005. The Parkers contend that information was furnished to KEY that "proved" that the KEY debt was not included in the Parker bankruptcy and that even after the Parkers "proved" to KEY that they had not included the KEY debt in their bankruptcy, KEY continued to report the debt as discharged. As the truth is often distasteful, the reporting of the bankruptcy of the Parkers and the discharge of the Parkes on their credit report will be a continuing reality for them for ten years following the date of their bankruptcy filing as required pursuant to 15 U.S.C.A. §1651(a)(1).

**1.2** The cause of action alleged by the Parkers is asserted as a violation of 15 U.S.C.A. § 1681s-2(b) of the Federal Fair Credit Reporting Act. (hereinafter generally referred to as the "FCRA"). See, Plaintiffs' Second Amended Complaint. ¶7. Damages are sought by the Parkers under §1681n and §1681o of the FCRA. See, Plaintiffs' Second Amended Complaint. ¶ 11.

**1.3** The Parkers allege that KEY made discreet reporting errors as to Donald Parker and as to Deborah Parker. They allege that the reporting of their account status by KEY is a violation of the FCRA because:

(1)  As to Deborah Parker:

    (a)  the account was listed as "closed";

    (b)  the account was listed as "discharged in bankruptcy with a $25,000.00 balance"; and

    (c)  the Parker bankruptcy was listed "as dated August 2005, when, in fact, it occurred in January 2005".

(2)  As to Donald Parker:

    (a)  the account was listed as "closed"; and

    (b)  the account was listed as "discharged in bankruptcy with a $25,000.00 balance".

(Hereinafter collectively referred to as the "Inaccuracies"). See, Plaintiffs' Second Amended Complaint. ¶4.A. - B.

**1.4**   The Parkers contend that KEY was notified of the Inaccuracies, but failed to perform a "reasonable investigation" and failed to correct the Inaccuracies. See, Plaintiffs' Second Amended Complaint. ¶7.

**1.5**   The Parkers also contend that as a result of the reporting by KEY they suffered damage to their credit history "which resulted in problems receiving credit or obtaining the best interest rates possible". See, Plaintiffs' Second Amended Complaint. ¶10. The Parkers allege that the Inaccuracies were wilfully committed by KEY and that they are to recover statutory penalties, actual damages, punitive damages and attorneys fees from KEY. See, Plaintiffs' Second Amended Complaint. ¶¶11 - 12.

**1.6**   KEY seeks summary judgment in its capacity as defendant on each of the claims alleged by the Parkers. KEY will show the Court that the Parkers have failed to establish the essential elements of their claim under 15 USCA §1681s-2(b), that there are no genuine issues of material fact regarding any element of any claim of the Parkers against KEY, and that KEY is entitled to summary judgment denying all of the claims of the Parkers against KEY. KEY will also show that as a result of the failure of the Parkers to establish the essential elements of their claim under 15 USCA §1681s-2(b), they are not entitled to damages under either 15 USCA §1681n - for willful violation of the FCRA - or 15 USCA §1681o - for negligent violation of the FCRA. Alternatively, and without waiving the foregoing, KEY will show that the Parkers have failed to present any evidence in support of their allegations and, accordingly, KEY is entitled to summary judgment denying the claims of the Parkers against KEY.

## II
## STATUS OF PLEADINGS AND DISCOVERY

**2.1**   The deadline for the Parkers to amend their pleadings was September 30, 2007.[1] The last live pleading filed by the Parkers was the Second Amended Complaint filed on the 26th day of July, 2007 [docket no. 17].

**2.2**   The deadline for the Parkers to designate any expert witnesses in support of the claims passed on October 30, 2007, with no such designation having occurred.[2] Other than counsel for the Plaintiffs, all persons with knowledge of discoverable facts (Deborah Parker and Donald Parker) have been deposed.

**2.3**   Discovery in this matter was to have been completed on or before December 19, 2007[3]. Though KEY agreed to permit the deposition of it corporate representative, Cassidy Emerson, to occur, on reasonable notice, on or before January 15, 2008, the Parkers have not noticed that deposition.

**2.4**   The dispositive motion deadline in this matter is January 15, 2008.[4]

## III.
## STANDARD OF REVIEW

**3.1**   As fully set forth in the Brief, a defendant seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-movant's case. It is undisputed that Courts must review all of the evidence and all factual

---

[1]   See Scheduling Order [Docket No. 14], ¶3

[2]   See Scheduling Order [Docket No. 14], ¶4

[3]   See Scheduling Order [Docket No. 14] ¶6

[4]   See Scheduling Order [Docket No. 14], ¶7

inferences from the evidence in the light most favorable to the non-movant, but that upon presentation of the defendant's motion for summary judgment, the burden shifts to the non-movant to set forth, with specificity, the facts supporting their assertion that there is a genuine issue as to a material fact for trial.

**3.2** KEY will show, following the well established principles of review of a motion for summary judgment under Rule 56(b), that it is entitled, as matter of law, to summary judgment denying the claims of the Parkers asserted against KEY.

## IV.
## SUMMARY OF UNDISPUTED FACTS

**3.1** The uncontested facts in this case regarding Deborah Parker are summarized as follows:

- A. Deborah Parker borrowed $25,150.00 from EncoreBank on the 19th day of January 2004 for the construction of a swimming pool at her residence located at 4109 Hillside Dr., Lago Vista, Texas 78645 (the "Parker Debt"). See, KEYBANK 047 - 058.

- B. On February 18, 2004, EncoreBank assigned the Parker Debt and collateral documents to KEY. See, KEYBANK 047.

- C. The Parker Debt was assigned account number 3211019966662 (the "Parker Account"). See, Emerson Affidavit ¶ 5.

- D. On October 6, 2004, Deborah Parker filed for Chapter 7 bankruptcy under Case No. 04-15172. See, Deborah Parker Deposition Pg 14, Line 24 - 25, Pg. 15, Line 1 - 8; Deborah Parker/Donald Parker Deposition Exhibit 2: Case No. 04-15172 Chapter 7 Petition and Schedules.

- E. Deborah Parker did not reaffirm the Parker Account. See, Deposition of Deborah Parker, Pg. 43, Line 8 - 10; Deborah Parker/Donald Parker Deposition Exhibit 3: Docket Sheet for Case No. 04-15172

- F. Deborah Parker received a discharge under 11 U.S.C. §727 on January 10, 2005. See, Deborah Parker Deposition Pg, 76, Line 6 -

16, Deborah Parker/Donald Parker Deposition Exhibit 4, Pg. 4: Discharge of Debtor Dated January 10, 2005.

G.  The Parker Account was reported by KEY in December 2004 as:
   i.   a home improvement loan originated on January 23, 2004,
   ii.  with an original balance of $25,150.00,
   iii. payable monthly in the amount of $197.00,
   iv.  with a "current account" status, and
   v.   included in a chapter 7 bankruptcy.
   See, Emerson Affidavit, ¶¶ 22 - 25, KEYBANK 212 - KEYBANK 213.

H.  The Parker Account was reported by KEY in January 2005 as:
   i.   a home improvement loan originated on January 23, 2004,
   ii.  with an original balance of $25,150.00,
   iii. payable monthly in the amount of $197.00,
   iv.  with a "current account" status, and
   v.   included in a chapter 7 bankruptcy.
   See, Emerson Affidavit, ¶¶ 22 - 25, KEYBANK 214 - KEYBANK 215.

I.  The Parker Account was reported by KEY from February 2005 through September 2007 as:
   i.   a home improvement loan originated on January 23, 2004,
   ii.  with an original balance of $25,150.00,
   iii. payable monthly in the amount of $197.00,
   iv.  with a "current account" status, and
   v.   Discharged in a chapter 7 bankruptcy.
   See, Emerson Affidavit, ¶¶ 22 - 25, KEYBANK 216 - KEYBANK 281.

J.  The Parker Account is a home improvement loan that was originated on January 23, 2004, that had an original balance of $25,150.00, and is reflected as having a "current account" status in the credit reports of the Parkers, and which was discharged in a chapter 7 bankruptcy. See, Emerson Affidavit, ¶¶ 22 - 25.

K.  The information reported on the Parker Account by KEY was factually accurate as of the date that it was reported. See, Emerson Affidavit, ¶ ¶ 5, 22 -25, KEYBANK 047 - 058, Deborah Parker Deposition Pg. 14, Line 24 - 25, Pg. 15, Line 1 - 8, Pg. 43, Line 8 - 10, Pg. 76, Line 6 - 16.

L.  KEY received and responded to the following dispute notifications regarding Deborah Parker and the Parker Account:
   i.   Received:  February 13, 2006 from Deborah Parker
        Responded: February 14, 2006
   ii.  Received:  February 21, 2006 from CSC Credit Services

                Responded: February 22, 2006
- iii. Received: April 11, 2006 from Gray Jolink, Esq.
                Responded: April 20, 2006
- iv. Received: January 31, 2007 from Experian
                Responded: February 1, 2007
- v. Received: February 9, 2007 from CSC Credit Services
                Responded: February 22, 2007
- vi. Received: August 29, 2007 from TransUnion
                Responded: September 10, 2007

See, Emerson Affidavit ¶ 10.

M. KEY timely responded to each dispute notice for Deborah Parker regarding the Parker Account. See, Emerson Affidavit Pg. 14.

N. Deborah Parker has not suffered any economic damage as a result of the trade line reporting by KEY of the Parker Account. See, Deborah Parker Deposition Pg. 91, Lines 3 - 12, Pg. 92, Lines 24 - 25, Pg. 93, Lines 1 - 2; McElroy Affidavit ¶ 7.

O. The only alleged damages of Deborah Parker are attorneys' fees incurred in bringing this lawsuit. See, Deborah Parker Deposition Pg. 97, Line 21 - 25, Pg. 98, Line 1 - 5.

P. KEY reasonably conducted an investigation of each dispute received regarding the Parker Account. *See*, McElroy Affidavit ¶ 5.

Q. KEY personnel reviewed all relevant information provided by the consumer reporting agency to KEY regarding each customer dispute. See, McElroy Affidavit ¶ 5; Emerson Affidavit ¶¶ 18 - 21.

R. KEY personnel timely reported the results of their investigation to all consumer reporting agency. See, Emerson Affidavit ¶¶ 15, 16, 21.

S. KEY has established and maintains guidelines regarding the accuracy and integrity of information regarding its consumer customers furnished to credit reporting agencies. See, McElroy Affidavit ¶¶ 2 - 3; Emerson Affidavit ¶ 9.

T. KEY has established and maintains reasonable policies and procedures for implementing the guidelines used in the reporting of consumer customer information to credit reporting agencies. See, McElroy Affidavit ¶ 3; Emerson Affidavit ¶¶ 4 and 17.

U. KEY utilizes the METRO 2 Format Task Force Guidelines published by the Consumer Data Industry Association, Inc. which guidelines

    reasonably maintain the accuracy and integrity of the information reported regarding the consumer customers of KEY. See, McElroy Affidavit ¶ 3A; Emerson Affidavit ¶ 9.

 V. KEY utilizes the e-OSCAR system for consumer credit reporting disputes, which system provides a system by which KEY can timely and accurately address consumer credit reporting disputes. See, Emerson Affidavit ¶ 9 and 17.

 W. KEY utilized the e-OSCAR system to manage the consumer credit reporting disputes lodged by Deborah Parker. See, Emerson Affidavit ¶¶ 9, 17, 20.

 X. The dispute by Deborah Parker that the KEY debt was not included in her bankruptcy was investigation by KEY personnel in a careful and reasonable manner. See, Emerson Affidavit ¶¶ 18 - 21.

 Y. The information and documentation reviewed by KEY personnel was reasonable in light of the nature of the dispute lodged by Deborah Parker. See, McElroy Affidavit ¶ 5; Emerson Affidavit ¶¶ 18 - 21.

**3.2** The uncontested facts in this case regarding Donald Parker are summarized as follows:

 A. Donald Parker borrowed $25,150.00 from EncoreBank on the 19th day of January 2004 for the construction of a swimming pool at his residence located at 4109 Hillside Dr., Lago Vista, Texas 78645. See, KEYBANK 047 - 058.

 B. On February 18, 2004, EncoreBank assigned the Parker Debt and collateral documents to KEY. See, KEYBANK 047.

 C. The Parker Debt was assigned account number 3211019966662 (the "Parker Account"). See, Emerson Affidavit ¶ 5.

 D. On October 6, 2004, Donald Parker filed for Chapter 7 bankruptcy under Case No. 04-15172. See, Deborah Parker Deposition Pg. 14, Line 24 - 25, Pg. 15, Line 1 - 8; Donald Parker Deposition Pg. 12, Line 18 - 25, Pg. 13, L 1 - 9; Deborah Parker/Donald Parker Deposition Exhibit 2: Case No. 04-15172 Chapter 7 Petition and Schedules.

 E. Donald Parker did not reaffirm the Parker Account. See, Deposition of Deborah Parker, Pg. 43, Line 8 - 10; Donald Parker Deposition Pg. 13, Line 15 - 25; Deborah Parker/Donald Parker Deposition Exhibit 3: Docket Sheet for Case No. 04-15172

F.  Donald Parker received a discharge under 11 U.S.C. §727 on January 10, 2005. See, Deborah Parker Deposition Pg. 76, Line 6 - 16; Donald Parker Deposition Pg. 14, Line 18 -23; Deborah Parker/Donald Parker Deposition Exhibit 4: Discharge of Debtor Dated January 10, 2005.

G.  The Parker Account was reported by KEY in December 2004 as:
    i.   a home improvement loan originated on January 23, 2004,
    ii.  with an original balance of $25,150.00,
    iii. payable monthly in the amount of $197.00,
    iv.  with a "current account" status, and
    v.   included in a chapter 7 bankruptcy.
    See, Emerson Affidavit, ¶¶ 22 - 25, KEYBANK 212 - KEYBANK 213.

H.  The Parker Account was reported by KEY in January 2005 as:
    i.   a home improvement loan originated on January 23, 2004,
    ii.  with an original balance of $25,150.00,
    iii. payable monthly in the amount of $197.00,
    iv.  with a "current account" status, and
    v.   included in a chapter 7 bankruptcy.
    See, Emerson Affidavit, ¶¶ 22 - 25, KEYBANK 214 - KEYBANK 215.

I.  The Parker Account was reported by KEY from February 2005 through September 2007 as:
    i.   a home improvement loan originated on January 23, 2004,
    ii.  with an original balance of $25,150.00,
    iii. payable monthly in the amount of $197.00,
    iv.  with a "current account" status, and
    v.   Discharged in a chapter 7 bankruptcy.
    See, Emerson Affidavit, ¶¶ 22 - 25, KEYBANK 216 - KEYBANK 281.

J.  The Parker Account is a home improvement loan that was originated on January 23, 2004, that had an original balance of $25,150.00, and is reflected as having a "current account" status in the credit reports of the Parkers, and which was discharged in a chapter 7 bankruptcy. See, Emerson Affidavit, ¶¶ 22 - 25.

K.  The information reported on the Parker Account by KEY was factually accurate as of the date that it was reported. See, Emerson Affidavit, ¶ ¶ 5, 22 -25, KEYBANK 047 - 058, Deborah Parker Deposition Pg. 14, Line 24 - 25, Pg. 15, Line 1 - 8, Pg. 43, Line 8 - 10, Pg. 76, Line 6 - 16.

L.  KEY received and responded to the following dispute notifications regarding Deborah Parker and the Parker Account:
    i.  Received: February 21, 2006 from CSC Credit Services
        Responded: February 22, 2006
    ii. Received: April 17, 2006 from Gray Jolink, Esq.
        Responded: April 20, 2006
    iii. Received: January 31, 2007 from Experian
        Responded: February 1, 2007
    iv. Received: February 9, 2007 from CSC Credit Services
        Responded: February 22, 2007
    See, Emmerson Affidavit ¶ 10.

M.  KEY timely responded to each dispute notice for Donald Parker regarding the Parker Account. See, Emerson Affidavit ¶ 14.

N.  Donald Parker has not suffered any economic damage as a result of the trade line reporting by KEY of the Parker Account. See, Deborah Parker Deposition Pg. 91, Lines 3 - 12, Pg. 92, Lines 24 - 25, Pg. 93, Lines 1 - 2; McElroy Affidavit ¶ 7.

O.  The only damages that Donald Parker alleges he has suffered is attorneys' fees. See, Donald Parker Deposition Pg. 28, Line 23 - 25, Pg. 29, Line 1 - 2.

P.  KEY timely conducted an investigation of each dispute received regarding the Parker Account. *See*, McElroy Affidavit ¶ 5.

Q.  KEY personnel reviewed all relevant information provided by the consumer reporting agency to KEY regarding each customer dispute. See, McElroy Affidavit ¶ 5; Emerson Affidavit ¶ 18 - 21.

R.  KEY personnel timely reported the results of their investigation to all consumer reporting agency. See, Emerson Affidavit ¶¶ 15, 16, 21.

S.  KEY has established and maintains guidelines regarding the accuracy and integrity of information regarding its consumer customers furnished to credit reporting agencies. See, McElroy Affidavit ¶¶ 2 - 3; Emerson Affidavit ¶ 9.

T.  KEY has established and maintains reasonable policies and procedures for implementing the guidelines used in the reporting of consumer customer information to credit reporting agencies. See, McElroy Affidavit ¶ 3; Emerson Affidavit ¶¶ 4 and 17.

U. KEY utilizes the METRO 2 Format Task Force Guidelines published by the Consumer Data Industry Association, Inc. which guidelines reasonably maintain the accuracy and integrity of the information reported regarding the consumer customers of KEY. See, McElroy Affidavit ¶ 3A; Emerson Affidavit ¶ 9.

V. KEY utilizes the e-OSCAR system for consumer credit reporting disputes, which system provides a system by which KEY can timely and accurately address consumer credit reporting disputes. See, Emerson Affidavit ¶¶ 9 and 17.

W. KEY utilized the e-OSCAR system to manage the consumer credit reporting dispute lodged by Donald Parker. See, Emerson Affidavit ¶¶ 9, 17, 20.

X. The dispute by Donald Parker that the KEY debt was not included in his bankruptcy was investigated by KEY personnel in a careful and reasonable manner. ¶¶ 18 - 21.

Y. The information and documentation reviewed by KEY personnel was reasonable in light of the nature of the dispute lodged by Donald Parker. See, McElroy Affidavit ¶ 5; Emerson Affidavit ¶¶ 18 - 21.

## IV.
## SUMMARY JUDGMENT EVIDENCE

**4.1** In support of its Motion For Summary Judgment on the claims asserted by the Plaintiffs against KEY, KEY offers the following summary judgment evidence which is incorporated herein by reference for all purposes as if set out word for word herein.

4.1.1 The Affidavit of Leslie M. Luttrell in Support of Unfiled Summary Judgment Exhibits attached hereto as Exhibit "1" regarding the following documents:

A. Plaintiffs' Second Amended Complaint [Docket No. 17];

B. Defendant's Answer And Affirmative Defenses To Second Amended Complaint [Docket No. 18];

    C.     Affidavit of Cassidy Emerson with Exhibits;

    D.     Affidavit of Pat McElroy with Exhibits;

    E.     KEY's First Request For Production To Plaintiffs;

    F.     Selected Documents Produced By Plaintiffs in responses to KEY's First Request For Production;

    G.     Cited Excerpts and Exhibits from the Deposition of Deborah Parker;

    H.     Cited Excerpts from the Deposition of Donald Parker;

## V.
## KEY HAS FULFILLED EACH DUTY IMPOSED PURSUANT TO §1681s -2(b) OF THE FEDERAL FAIR CREDIT REPORTING ACT

**5.1**     The summary judgment of KEY is of mixed nature, being both a traditional motion for summary judgment and a no evidence motion for summary judgment. The standards for each of these are more fully set forth in the Brief filed contemporaneously herewith and incorporated herein by reference for all purposes as if fully set forth at length.

**5.2**     KEY moves for summary judgment on the basis that as to the claims for relief under the Fair Credit Reporting Act, the Parkers have failed to establish one or more essential element of this claim. Alternatively, KEY moves for summary judgment on the basis that the Parkers' claim fails because there is no evidence to support any such claim for relief as plead by the Parkers. Alternatively, the Parkers claims fail because KEY has established by incontrovertible summary judgment evidence that an affirmative defense precludes recovery by the Plaintiffs - KEY accurately reported each item on the trade line of Donald Parker and of Deborah Parker regarding the Parker Account.

**5.3** The Parkers have alleged that KEY has violated §1681s-2(b). The uncontraverted evidence set forth at Paragraphs 3.1 and 3.2 confirms that the Parkers have failed to meet their threshold burden of presenting any evidence that:

> (a) the information reported was inaccurate at the time that it was reported,
>
> (b) that the information claimed by the Parkers to have been reported by KEY was actually reported by KEY, or
>
> (c) that KEY failed to conduct a reasonable investigation of the facts underlying the Parkers' dispute.

The Parkers have failed to establish by any credible evidence that KEY did not fulfil each of the duties of a "furnisher" of information required under 15 U.S.C.A. §1681s-2(b).

**5.4** The uncontraverted evidence does establish that:

> (a) the information reported was accurate at the time that it was reported,
>
> (b) the information claimed by the Parkers to have been erroneously reported by KEY was *NOT* reported by KEY, and
>
> (c) that KEY conducted a thorough and reasonable investigation of the facts underlying the Parkers' dispute and accurately reported the facts relative to and the status of the Parker Account.

Accordingly, the claims of the Parkers asserted under §1681s-2(b) should be denied in their entirety.

## VI.
## CONCLUSION AND PRAYER

The incontrovertible summary judgment evidence establishes that KEY is entitled to summary judgment denying the claims asserted by the Parkers. The Plaintiffs have failed to establish the essential elements of a claim under §1681s-2(b); alternatively, there are no genuine issues of material fact regarding any element of any claim of the Parkers against KEY, and KEY is entitled, as a matter of law, to summary judgment denying all of the claims of the Parkers against KEY.

**WHEREFORE, PREMISES CONSIDERED**, KeyBank, N.A. requests that this Court grant the Motion Of KeyBank, N.A. for Summary Judgment, together with such other and further relief at law or in equity to which they may show themselves to be justly entitled.

Respectfully submitted,

Morgan & Luttrell, L.L.P.
Travis Park Plaza Bldg.
711 Navarro, Suite 210
San Antonio, Texas 78205
Tel. 210.224.5399
Fax. 210.224.5091

By /s/ *Leslie M. Luttrell*

Leslie M. Luttrell
State Bar No. 12708650

Counsel for Key Bank, N.A.

## CERTIFICATE OF SERVICE

I, Leslie M. Luttrell, do hereby certify that on the 15th day of January, 2008, a true and correct copy of the above and foregoing document has been forwarded to the counsel and in the manner indicated below:

Robert P. Nunis, Esq         ***Via:***   ***Facsimile 512.236.9695***
801 West Avenue, Suite 200                ***and e-mail bnunis@nunislaw.com***
Austin, Texas 78701

/s/ *Leslie M. Luttrell*
Leslie M. Luttrell

## INDEX OF EXHIBITS IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1. EXHIBIT A: Plaintiffs' Second Amended Complaint [Docket No. 17];

2. EXHIBIT B: Defendant's Answer And Affirmative Defenses To Second Amended Complaint [Docket No. 18];

3. EXHIBIT C: Affidavit of Cassidy Emerson with Exhibits;

4. EXHIBIT D: Affidavit of Pat McElroy with Exhibits;

5. EXHIBIT E: KEY's First Request For Production To Plaintiffs;

6. EXHIBIT F: Selected Documents Produced By Plaintiffs in responses to KEY's First Request For Production;

7. EXHIBIT G: Cited Excerpts and Exhibits from the Deposition of Deborah Parker;

8. EXHIBIT H: Cited Excerpts from the Deposition of Donald Parker;